IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CT-3002-D

| | | |
|---|---|---|
| AVENGER DON RIDGEWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JON DAVID, | ) | |
| | ) | |
| Defendant. | ) | |

On January 3, 2012, Avenger Don Ridgeway ("Ridgeway" or "plaintiff"), a state inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983. Compl. [D.E. 1]. Ridgeway seeks leave to proceed in forma pauperis under 28 U.S.C. § 1915 [D.E. 2]. On July 9, 2012, the court reviewed the action pursuant to 28 U.S.C. § 1915A, denied Ridgeway's motions for default judgment and service, and allowed the action to proceed [D.E. 9], and the clerk directed North Carolina Prisoner Legal Services ("NCPLS") to investigate plaintiff's claims [D.E. 10]. On September 26, 2012, NCPLS filed a response to the order of investigation, indicating that it had provided advice and assistance to Ridgeway, and appointment of counsel was not required [D.E. 17]. On November 13, 2012, Ridgeway filed a motion for default judgment [D.E. 20]. On November 15, 2012, Ridgeway filed a motion for discovery [D.E. 21]. On December 12, 2012, the court directed defendant to file a response to Ridgeway's motion for default judgment or other appropriate motion on or before January 11, 2013 [D.E. 22]. On December 26, 2012, the court received returned as undeliverable the copy of its December 12 order mailed to defendant [D.E. 24], and on January 2, 2013, the court mailed a second copy of the order to defendant at the correct address.

On January 8, 2013, defendant entered a notice of appearance through counsel and sought and obtained an extension of time in which to respond [D.E. 25–27]. On January 18, 2013, defendant filed a motion to dismiss motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) [D.E. 30–31]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Ridgeway about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 32]. On January 25, 2013, Ridgeway filed a motion for reconsideration of the court's order granting defendant an extension of time [D.E. 33]. On February 8, 2013, Ridgeway moved to amend his complaint [D.E. 34] and responded in opposition to the motion to dismiss [D.E. 35]. On February 11, 2013, Ridgeway again moved to amend his complaint [D.E. 36]. On February 12 and 19, 2013, defendant responded in opposition to plaintiff's motions to amend [D.E. 37, 39], and Ridgeway filed a second response in opposition to defendant's motion to dismiss [D.E. 38]. On February 27, 2013, Ridgeway filed a reply in support of his motions to amend [D.E. 40]. On March 7, 2013, Ridgeway filed a reply and a declaration [D.E. 41–42]. As explained below, the court grants plaintiff's motions to amend, denies plaintiff's other motions, and grants defendant's motion to dismiss.

I.

First, the court addresses plaintiff's motions for default judgment and for reconsideration of the court's order granting defendant an extension of time to respond to plaintiff's motion for default judgment [D.E. 20, 33]. On August 3, 2012, the United States Marshal filed a return of service, indicating that defendant was served with the complaint on July 18, 2012 [D.E. 14]. The clerk's order directing NCPLS to investigate plaintiff's claims instructed defendant to answer the complaint thirty days after NCPLS filed its response [D.E. 10]. On September 26, 2012, NCPLS filed its response to the order of investigation [D.E. 17], and Ridgeway contends that defendant was therefore

2

required to answer the complaint or otherwise respond on or before October 26, 2012. Mot. Default Judgment 1–2. Defendant ultimately did not respond to the action until January 18, 2013, and his motion for an extension of time states "[t]here may have been some mishap concerning service of the Complaint," [D.E. 26] 1, but defendant did not further elaborate on his delay. Defendant's motion to dismiss does not assert improper service of the complaint.

"When an act . . . must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Whether neglect is excusable "is at bottom an equitable [determination], taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).

Taking into account the relevant circumstances, defendant has demonstrated excusable neglect. Ridgeway has suffered no prejudice by the late filing of defendant's motion to dismiss. Moreover, it appears that at least some of the delay is attributable to an incorrect address Ridgeway provided the court in his complaint for service on defendant, and the potential impact on the judicial proceedings—entering default judgment against defendant—runs counter to the Fourth Circuit's "longstanding policy in favor of merits-based adjudication." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 n.3 (4th Cir. 2010). Accordingly, the court denies Ridgeway's request for default judgment against defendant for his untimely filing [D.E. 20] and motion for reconsideration of the clerk's order granting defendant an extension of time [D.E. 33].

3

Next, the court addresses Ridgeway's motions to amend his complaint [D.E. 34, 36]. Ridgeway's original complaint asserts "that former and local District Attorneys Rex Gore and [defendant] Jon David . . . [are] depriving [Ridgeway] of his constitutional right to due process of law by denying him the biological evidence that could corroborate[] his innocence . . . . Plaintiff wish[es] to sue for and obtain DNA evidence that went untested at the original prosecution and [was] related to the investigation in 1997." Compl. 3–4. Ridgeway seeks injunctive relief in the form of "an attorney to subpoena documents and witnesses . . . that came in . . . contact with the evidence that plaintiff wants tested" and testing of forensic evidence. Id. 4, 8.

Ridgeway seeks to amend his complaint "to overcome any deficiency" in response to defendant's motion to dismiss and to make clear that the evidence he seeks to have tested is a bloodstained knife, and that he qualifies for North Carolina's post-conviction DNA testing and therefore has a "due process liberty interest" in having the knife tested. [D.E. 34] 1–2 & Ex. A (transcript page); [D.E. 36] 1–2.

Under Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend his complaint once as a matter of course within 21 days after the earlier of (1) service of a responsive pleading or (2) service of a motion under Rule 12(b), (e), or (f). After expiration of this time period, a party may amend only with either the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Ridgeway filed his first motion to amend within 21 days of defendant's motion to dismiss, and that amendment is therefore of right. Galustian v. Peter, 591 F.3d 724, 730 (4th Cir. 2010). Ridgeway's second motion to amend requires leave of court. Under Rule 15, a "motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008); see Foman v. Davis, 371 U.S. 178, 182 (1962). However, "the grant or denial of an opportunity to amend is

4

within the discretion of the District Court." Foman, 371 U.S. at 182; see Pub. Emps.' Ret. Ass'n of Colo. v. Deloitte & Touche LLP, 551 F.3d 305, 313 n.3 (4th Cir. 2009); Nourison, 535 F.3d at 298. The court concludes that amendment would not be prejudicial, and Ridgeway has not acted in bad faith. Therefore, the court grants Ridgeway's motions to amend, and weighs the additional allegations against defendant's motion to dismiss.

Next, the court addresses defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). Thus, the court turns first to the question of subject-matter jurisdiction.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012). Because plaintiff asserts that this court has subject-matter jurisdiction, he must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Evans, 166 F.3d at 647.

On February 5, 1999, in Columbus County Superior Court, Ridgeway "was tried non-capitally and convicted of second-degree murder and determined by the jury to be an habitual violent felon. [Ridgeway] was sentenced to from 251–311 months [sic] imprisonment and life

5

without parole, respectively." Ridgeway v. Lee, No. 5:02-HC-896-H, [D.E. 11] 2 (E.D.N.C. Dec. 18, 2003) (unpublished). Ridgeway asserts "that former and local District Attorneys Rex Gore and [defendant] Jon David . . . [are] depriving [Ridgeway] of his constitutional right to due process of law by denying him the biological evidence that could corroborate[] his innocence . . . . Plaintiff wish[es] to sue for and obtain DNA evidence that went untested at the original prosecution and [was] related to the investigation in 1997." Compl. 3–4. Ridgeway seeks injunctive relief in the form of "an attorney to subpoena documents and witnesses . . . that came in . . . contact with the evidence that plaintiff wants tested" and testing of forensic evidence. Id. 4, 8. The evidence Ridgeway seeks to have tested is a bloodstained knife, and he asserts that he qualifies for North Carolina's post-conviction DNA testing and therefore has a "due process liberty interest" in having the knife tested. [D.E. 34] 1–2 & Ex. A (transcript page); [D.E. 36] 1–2.

According to defendant, Ridgeway "has litigated this issue in criminal Superior Court, Court of Appeals and North Carolina Supreme Court through appeals, Motions for Appropriate Relief (hereinafter 'MAR') and numerous other motions to have the alleged DNA tested, all of which motions were denied." Mem. Supp. Mot. Dismiss 2 (citing Def.'s Exs. 1–9 (copies of state-court orders). Ridgeway has filed at least six motions in state court seeking DNA testing, and he received court-appointed counsel and a hearing on the issue in 2007. See Mot. Dismiss, Exs. 5, 7 (state court orders recounting Ridgeway's litigation history).

In allowing this case to proceed at frivolity review, the court cited Skinner v. Switzer, 131 S. Ct. 1289, 1298–99 (2011), a Supreme Court case about a challenge to a state's post-conviction DNA testing procedure. [D.E. 9] 3. Defendant asserts that Ridgeway's complaint is distinguishable from Skinner because Ridgeway does not "challenge the constitutionality of" N.C. Gen. Stat. § 15A-269, North Carolina's statutory procedure for requesting post-conviction DNA testing, but rather

6

"challenges the adverse State lower court, Court of Appeals and Supreme Court decisions themselves, sufficiency of the evidence presented to the jury and, apparently, the jury verdict." Mem. Supp. Mot. Dismiss 2. Therefore, defendant asserts that the Rooker-Feldman doctrine bars plaintiff's claim. Id. 4–5.

The Rooker-Feldman doctrine prohibits a "party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Washington v. Wilmore, 407 F.3d 274, 279 (4th Cir. 2005) (quotation omitted). "The Rooker-Feldman doctrine bars lower federal courts from considering not only issues raised and decided in state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." Id. (quoting D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983)). Moreover, "if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside the jurisdiction of the federal district court." Davani v. Va. Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006).

The Rooker-Feldman doctrine encompasses "not only review of adjudications of the state's highest court, but also the decisions of its lower courts." Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir. 2000) (quotation omitted). Rooker-Feldman "reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeal." Id. (quotation omitted). "The doctrine [also] preserves federalism by ensuring respect for the finality of state court judgments . . . ." Washington, 407 F.3d at 279.

7

The Rooker-Feldman doctrine is a "narrow doctrine." Lance v. Dennis, 546 U.S. 459, 464 (2006). The doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); see Skinner, 131 S. Ct. at 1297. For the doctrine to apply, the party seeking relief in federal court must be asking the federal court to "'reverse or modify' the state court decree." Adkins v. Rumsfeld, 464 F.3d 456, 464 (4th Cir. 2006) (quoting Exxon Mobil, 544 U.S. at 284). Accordingly, the court "examine[s] whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If [the state-court loser] is not challenging the state-court decision, the Rooker-Feldman doctrine does not apply." Davani, 434 F.3d at 718 (footnote omitted); see Washington, 407 F.3d at 280.

In Skinner, the State of Texas enacted a law providing a procedure for seeking postconviction DNA testing several years after a prisoner was convicted, and, after two unsuccessful attempts to obtain DNA testing through the state courts, the prisoner filed a section 1983 suit alleging that the statute "'as construed' by the Texas courts" violated his Fourteenth Amendment procedural due process rights. 131 S. Ct. at 1296. Specifically, Skinner's complaint alleged that the Texas state courts "have construed the statute to completely foreclose any prisoner who could have sought DNA testing prior to trial, but did not, from seeking testing postconviction." Id. (alterations and quotations omitted).

Here, Ridgeway does not allege that North Carolina's post-conviction DNA statute is constitutionally inadequate either facially or as applied. Rather, Ridgeway specifically asserts "that he met the requirements . . . in the DNA Law" and that the state courts' denials of his motions were "one-sided proceedings." [D.E. 1] 6; [D.E. 36] 2. Therefore, Ridgeway challenges adverse state-

8

court decisions, and the court lacks subject-matter jurisdiction over his claims. Cooper v. Ramos, 704 F.3d 772, 781 (9th Cir. 2012); Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1262 (11th Cir. 2012); see, e.g., Bonner v. Montgomery Cnty., 458 F. App'x 135, 136–37 (3d Cir. 2012) (per curiam) (unpublished).

II.

In sum, the court GRANTS plaintiff's motions to amend [D.E. 34, 36] and defendant's motion to dismiss [D.E. 30], DENIES plaintiff's remaining motions [D.E. 20–21, 33], and DISMISSES the action for lack of subject-matter jurisdiction. The clerk shall close the case.

SO ORDERED. This 10 day of June 2013.

JAMES C. DEVER III
Chief United States District Judge

9